Our next case is Corning Optical Communications v. Panduit, 2019, 1248 and 1250. Mr. O'Quinn. Before you start, can I just tell you how much I appreciate that you limited your arguments on appeal to what you thought were the most successful arguments and didn't raise every single issue from the IPRs because that rarely happens. And I really appreciate appellate counsel selectively making their arguments, not throwing the kitchen sink at us. Well, thank you, Judge Hughes. I appreciate that. And thank you, Judge Lohrer. You may have pleased the court. John O'Quinn on behalf of Corning. We have focused on a singular issue on appeal because it's one where Panduit's obviousness arguments depend on taking the claimed invention and working backwards to conclude that it would be obvious to make and use the first ever translucent CAM mechanism. And the very prior art that Panduit relies on, the Takazawa reference, teaches a different solution to the purported problem. The claims require, and this is why we appeal just with respect to these claims, Judge Hughes, the claims require both a translucent splice component and a translucent CAM. But Takazawa only teaches the former and not the latter. And it is undisputed that there was no translucent CAM disclosed anywhere in the prior art. Yet you will search Panduit's expert's testimony and the board's decision in vain to find any analysis or any reasoning for why a skilled artisan with Takazawa in hand would have been motivated to develop a translucent CAM rather than using Takazawa's solution of a forcing mechanism with a physical opening. And that's a solution that Takazawa itself put emphasis on. If you look at appendix 1144, column 8, lines 49 to 53, Takazawa tells you that the clamping force applying device 36 is not limited to a C-shaped spring provided that an opening 48 can be obtained. Yet neither Panduit's expert nor the board identify any drawbacks to Takazawa's solution. Instead, they argue at page 34 of their red brief that their expert was not even required to consider Takazawa's solution because they relied on different prior art for the disclosure of a CAM. Now, respectfully, that doesn't make sense. When you're assessing motivation, this court has made clear in cases like Polaris v. Arcticat and Arundi v. Apple, there must be some reason for not pursuing a known solution to the purported problem or some reason for not pursuing a divergent path. And this court in Polaris v. Arcticat was very clear that the board must analyze whether a skilled artisan would be led in a direction that diverges from the path that was taken by the patentee. Here, in this case, in light of Takazawa's other teachings. But isn't the reason here that the clamp in Takazawa is not removable once you put it on and your CAM is? And isn't that enough of a reason to say, well, we're going to move from this clamp to the CAM. And because we need to see into it, instead of having the gap, we're going to use a translucent CAM. I mean, that seems to be a reason to do it. I don't know that that was articulated well enough. Although, you're on a very hard center review here. And they do have some expert testimony suggesting that it would make sense. So I guess, isn't that enough of a reason to go from Takazawa to a translucent CAM? So Judge Hughes, first, I'm not sure at all that the C-shaped spring, once it's applied, is not removable. I'm not aware of that being the case. Maybe I misread the record. But let's just assume that was true. That would seem to me to be the sense I got that was one of the doubts. And maybe your friends can correct me if I'm wrong. But let's assume that's true. Isn't that a reason, enough of a reason, to modify the whole splicing technique in Takazawa with a translucent CAM instead of this gap C clamp? So Judge Hughes, there might be reasons to say that you would prefer using the type of mechanical CAM device that we used as opposed to the spring device that Takazawa used. But you won't find any analysis for why the person of ordinary skill in the art would be led, with Takazawa in hand, to use the CAM and to make the CAM translucent. There's literally nothing in their experts' analysis to say, oh, well, the solution, a person of ordinary skill in the art would recognize that this solution would be better. And that's exactly what I'm saying is missing here. That there needs to be some analysis for why a person of ordinary skill in the art would think that this combination was better than a combination that uses Takazawa's teachings. And that doesn't mean that somebody has to mechanically take Takazawa's spring and apply it with Takazawa's CAM. Why do they have to say it would have been better? Can't they just say, looking at the prior art, a skilled artisan would have known to do this? Not that it's better, but that it could be done. And isn't that what their experts said? I mean, I've struggled with this. This seems a little hindsight-y to me. I know that's not a real word. But again, I'm on a really hard standard of review here, and it seems like Takazawa has pretty much everything except, well, and all the other references, but none of those are really in dispute, except the translucent CAM. And there's at least some testimony from their expert suggesting that a skilled artisan would know to use this. Well, Judge Hughes, a couple of things. First, I think what's fundamentally going on here is that Pandewitt's approach offers a solution in search of a problem that didn't need solving. That is, Takazawa provides a complete solution for how to be able to see the light, if that is the motivation that they want to rely on for why somebody would have combined all of these things together in the first place. And second, while I agree with you that, yes, the standard of review is an important one here, number one, I think that what the board has done has engaged in legal error, because the board never grapples with the argument that I'm making. The board doesn't say, hey, you're right, there's a reason that a person would still be motivated by this, even though Takazawa teaches a complete solution. Instead, at pages 25 and 28, the board just simply says, Pandewitt, quote, relies on Dijon and CAM light and not Takazawa for teaching the recited CAM mechanism, end quote. That's a legal error in the board's analysis. And to the extent that you're positing, well, maybe there would be a reason that a person of ordinary skill in the art would think that it would make sense to modify in light of what they've learned from Takazawa. What you're now doing is positing things that are not in the record. And we're, of course, here on APA review. The court cannot affirm on alternative grounds or alternative hypotheticals that it can only affirm on things that are in the record. And the record does not reflect a reason that a person of ordinary skill in the art would take the teachings of Takazawa and say, oh, well, that means that I should not only have the translucent splicing components, but even though Takazawa teaches using a physical opening. And you could do the same with a CAM. You could have a physical opening in the CAM. Instead of doing what Takazawa teaches, I'm going to instead say, let's have a translucent CAM for the first time ever. And the only thing that they even attempt to point to, and the only thing that the board quotes, is there's a passage from their expert that talks about that you could potentially, quote, view from a variety of directions rather than only one specific viewing direction. That's Appendix 1027. That's the only thing along the lines of what you're asking. Why wouldn't somebody take this and put it together? That's the only thing that the board potentially points to. Were translucent CAMs known in the art? No. So this patent is the first one that disclosed a translucent CAM. Yes. And that's why I think this case is similar to Arendi versus Apple and DSS, because what you're dealing with is a limitation that is missing from the art. But Takazawa discloses the connector with translucent splicing components. That's right, Judge Laurie. Discloses translucency. It discloses that you would have a translucent splicing component and that you would have a spring with an opening in it. And it teaches you that you don't have to use the spring. But at 1144, column 8, line 49, it's okay if you use something other than the spring, but it has to have the physical opening. And the problem here is they want to look at Takazawa and take certain snippets out of it as opposed to looking at it for all that it teaches. And precisely because you don't have a teaching of translucency with respect to the force-applying device, the question then... Well, a component with a property is not a snippet. Well, I guess the way I'd put it, Judge Laurie, is Takazawa teaches translucent A and have component B with a window. And they're saying, well, that makes it obvious to have translucent A and B. And my response to that is, okay, well, where's the analysis to show that? Where is the why? Why wouldn't a person of ordinary skill in the art with a known solution in hand use that solution? And the only thing that they've ever suggested is this viewing from a variety of viewing angles. And very important to look at that testimony. It's page 1027 of the appendix. And it is not addressing Takazawa at all. It is making a comparison between the translucent cam and the prior art opaque cam, the solid opaque cam, where what you could potentially do is peek around that solid opaque cam. It goes to grounds that the board did not institute on. There is never in either the analysis of their expert or the board's decision any explanation, any reasoning, any logic for why a person of ordinary skill in the art would, instead of using the type of solution suggested by Takazawa, would instead for the first time come up with something completely new. I see I'm beginning to be in my rebuttal time. I'm happy to continue answering questions, or I can save the rest of my time and respond on rebuttal. Well, we'll save it for you, Mr. O'Quinn. Thank you, Judge Larry. Mr. Melinda. Good morning, your honors. May it please the court. Before jumping into the specific points that Mr. O'Quinn raised, I'd like to just talk generally about a problem that infects all of the various arguments that Corny makes today. And also makes in his brief. And what the board found was that it misframes the obviousness analysis. And it found that at A25, A28, and A30 of its final written decision, a person of skill in the art would have started with the cam light references, which are really only one reference. They basically all boil down to the cam light connector, various aspects of that. And Corny does not dispute that all of those various connector components all disclosed that are recited in the claims. So you've got basically everything in one place. Then all you have to do is look to Takizawa for its translucency teaching. That's all we're doing here is making a very simple modification, a minor modification, to the cam mechanism that is already disclosed in cam light. And they concede that. Sure, but there's never been a translucent cam. I mean, if there had, you would have cited that as a reference. Right. But what Dr. Deke has testified is that, and this is really the crucial part they've hit on that, is he said you'd want to view the splice junction from a variety of different angles. That's why you would want to make that translucent. And that's what the board adopted and made its finding in the final written decision, A29. That testimony is crucial. That was different viewing angles that a person of skill in the art would use to look at the splice junction. That is your reason to make the modification. And Takizawa is in the same field. 100%, and that's exactly why you combine the references. And moreover, Mr. Pearson didn't dispute that. And that's a crucial point that the board found in A29, is that this wasn't disputed. So basically, the more translucency you can add to this, the better. And in fact, they've conceded the fact, the limitation regarding translucent splice components. So keep in mind, the splice components work together with the cam mechanism. So the more translucency, the better. And therefore, you'd have that motivation to modify. Counselor, let's go to Takizawa at, let me see, it's 1142, column 4, line 36. And it says, the member component section for clamping the optical fiber in the connection mechanism is preferably made from, and it goes on, it says, suitably or suitably translucent properties. Is the member for clamping, is that a cam? It's a little confusing there, Your Honor, but what I believe they're referring to is the components. The components, in other words, the splice components. So in other words, those are things that work together with the cam to do that splicing of the two fibers. That they are part of the cam. It's not really part of the cam. They work together with the cam to bring the two fibers together. But this evidence that you're zeroing in on, Your Honor, at column 4, along with the teachings in column 8, and this is lines roughly 48 of column 8 to column 9, roughly line 6, that plus the testimony from Dr. DeCusades is the substantial evidence to affirm the board's finding. That is really the essence of all of this, and individually or collectively. So I think there's ample substantial evidence to support the motivation to modify, both with respect to Takazawa and Dr. DeCusades' interpretation of that evidence, and then application here. I just wanted to talk about a couple things that he raised specifically. First of all, he talks about the fact that Takazawa doesn't teach the translucent cam, but again, it teaches the translucent splice components that work with that cam. That is conceded by Corning, the fact that those splice components are taught in the art. So it's a very minor baby step to go to than a translucent cam that works with them. Also, Mr. Oakman mentioned that Dr. DeCusades never identified a particular drawback with respect to the C-shaped spring. Well, first of all, I don't believe there's a legal requirement to look for a drawback, particularly when you have an affirmative reason to look at the teachings as a whole that Takazawa provides, which is the C-shaped spring, but also translucency. That's why it's sort of an irony what they're arguing, which is that we're focusing narrowly on bits and pieces of Takazawa, when in reality that's exactly what they're doing by ignoring translucency and focusing only on the C-shaped spring. Not to mention the fact that the C-shaped spring is a completely different design than the particular thing they call a slider, which is in the cam-like connector references. That's a slider. It's a very different thing. So the board finds you wouldn't try to bodily incorporate this C-shaped spring into the cam-like connector, particularly because the cam-like connector already has a cam in it, so there'd be no reason to do that. And I think that's particularly true because you'll notice in the Takazawa C-shaped spring, all that has is a narrow slit. What the board found was that at A29 is the more translucency the better so that you can see these various viewing angles. So of course if you made the entirety of the cam translucent, you'd have plenty of viewing angles to look at the splice junction as you're bringing the two fiber optic cables together. Judge Hughes, you touched upon the standard review here. The standard review is very hard for them, and I should emphasize that we have ample substantial evidence, both with respect to the citations in Takazawa, as well as Dr. Dekeus's testimony. As you mentioned earlier, Judge Hughes, in the first argument, many litigants come in arguing that testimony is conclusory. In fact, they argue that in their briefing. This is exactly the opposite of conclusory because we have an actual cogent explanation for why one would have that motivation to modify, which is maximizing viewing angles. And again, that's at A1027 to A1028 of the joint appendix. If there are no further questions, just to conclude, substantial evidence supports the board's finding of a motivation to modify the cam of the cam light connector to arrive at the translucent cam. That evidence includes Takazawa's teachings of the benefits of translucency. I'll just direct you to the page sites again, A1142, which is column four, lines 35 through 55, as well as A1144 through A1145, which is 854 through 96. And in fact, this evidence was so compelling, these are Takazawa's translucency teachings, that Corning actually attempted to antedate, unsuccessfully, to get rid of Takazawa as part of this analysis. Clearly it failed, which is why we're here today. And I should also point out, of course, Dr. D. Q. Sadas' testimony, that there would be a very strong motivation to arrive at the translucent cam so that person of skill could look at various viewing angles and determine whether or not there was splice continuity. And I'll refer the court to 1027 through 1028, as well as his testimony in paragraph 71 at 1031 through 1032. And then just to close, I'd like to just read a quote from you, and we cited this case in our standard review section, just to touch on Judge Hughes' point, that if two inconsistent conclusions may reasonably be drawn from the evidence in the record, the PTAB decision to favor one conclusion over the other is the epitome of a decision that must be sustained for review for substantial evidence. And really, that's exactly what we have here. Even if there's some sort of factual disagreement about whether you would use translucency or whether or not you would use the C-shaped spring, that ball-and-strike sort of judgment call should be deferred to by the board, particularly given that we have substantial evidence both in Takazawa as well as Dr. Deacon-Sedis' testimony. And for those reasons, we believe this court should affirm. Thank you, counsel. Mr. O'Quinn has some rebuttal time. Thank you, Judge O'Leary. What is going on here is the use of the patent as a template for its own reconstruction. Just what this court said you cannot do in sinsonics. That's the reason that they pick a collection of prior art that they say would give you a CAM and therefore a translucent CAM. But of course, as this court said in A.T.D. v. Lidell, what motivates a person of ordinary skill in the art cannot be based on hindsight consideration of components selectively called from the prior art to fit the parameters of the patented invention. And that is exactly what they are doing by focusing on Takazawa, which teaches translucency for one thing and teaches a physical opening for the thing that they are now trying to apply translucency to. The only justification that he has is exactly what I told you it was going to be. He points to the one statement that you could view from, quote, a variety of viewing angles. And I encourage you to go back and look at page appendix 1027. The board cites it. It block quotes it at appendix 29. And on that page, there is no discussion, no comparison to Takazawa whatsoever. He is not talking about or making a comparison to Takazawa's solution. He is talking about a comparison solely to the use of opaque CAMs that were in the prior art. And so there is nothing that they point to, in fact, to show that a person would be motivated to come up with something other than Takazawa. Because obviously, what motivates a person of ordinary skill in the art isn't to invalidate a patent. It isn't even to invent something new. It is to find something that works. And does Takazawa work? Their experts said, and this is at appendix 2171, that Takazawa allows one to, quote, easily verify the optical connection and gives a, quote, wide range of directions from which to look. And so what we're left with is nothing but attorney argument to fill in what is a fundamental failure of proof here. He says, well, it's just a baby step to go from having translucent splicing components to saying you want to have more translucent components. Well, if it was that obvious to do that, why didn't Dijon? Or why didn't their expert give some explanation for why it would be obvious to take that step? Because the one thing he pointed to has nothing to do with translucent CAMs at all. And that brings me back to one of the questions that you asked earlier, Judge Hughes, and that's this. There had never been a translucent CAM in the prior art. And as this court has held in DSS and in Arendi, when you're talking about a limitation that is missing, the search for a reasoned basis for a person of ordinary skill in the art to modify to come up with that has to be searching. And that is what is lacking here, as well as no analysis by the board whatsoever of the, quote, existence of a prevalent method of achieving the limitation at issue, end quote, which this court found was prejudicial for the board not to do in Arendi versus Apple. And so based on that, I think what you have is not just an issue vis-a-vis substantial evidence, which is lacking, but a legal error by the board by failing to engage in the kind of analysis that is required based on the prior art that was presented to the board. I'm happy to answer any additional questions that the panel may have, but we would urge the court to reverse with respect to the claims that we have appealed. Thank you, counsel. The case is submitted. Thank you, Judge Lurie.